

**SIGNED this 02 day of November, 2010.**

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**
_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR
### THE EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **In re** | ) | |
| | ) | |
| **WFG, LLC** | ) | **No. 09-11265** |
| | ) | **Chapter 7** |
| **Debtor** | ) | |
| _____ | ) | |
| | ) | |
| **Richard P. Jahn, Trustee** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Adv. No. 09-1166** |
| | ) | |
| **Carley Jewels, LLC** | ) | |
| | ) | |
| **Defendant** | ) | |

### M E M O R A N D U M

This adversary proceeding is before the court on the motion for summary judgment filed

by the defendant on August 19, 2010. In this proceeding, the plaintiff seeks the avoidance and

1

recovery of transfers of nine items of jewelry by the debtor to the defendant as preferential or fraudulent transfers. The motion before the court asserts that the proceeding should be dismissed, because (1) the debtor had no interest in the items transferred, and (2) the claims asserted in this proceeding were abandoned by the plaintiff. For the reasons set forth below, the court will deny the motion.

**I.**

The record reveals the following undisputed facts. The defendant is engaged in the business of custom design of jewelry, but also sells jewelry owned by other parties or bought from other parties. The debtor operated an upscale retail jewelry store known as The W Gallery from the spring of 2008 until February 2009.

The defendant delivered one item of jewelry (the helios necklace) to the debtor on June 6, 2008. The defendant delivered two items of jewelry (a lago ring and a pair of helios earrings) to the debtor on July 14, 2008. The defendant delivered a fourth item of jewelry (a sugar pendant and earring set) to the debtor on August 19, 2008. The defendant delivered five additional items of jewelry to the debtor on or about December 23, 2008. All nine items were returned to the defendant in January 2009. The plaintiff contends that the items were consigned to the debtor. The defendant contends that two of the items (the lago ring and the sugar pendent and earring set) were delivered to the debtor for "sale subject to my approval." The defendant contends that the other items were delivered solely for the purpose of display at a "trunk show" and, if a customer wanted to buy any of the items, the defendant would make a duplicate. The debtor's trunk show took place on December 23, 2008.

The defendant never filed a UCC-1 financing statement with respect to any of the jewelry items described above.

On March 2, 2009, the debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, and the plaintiff was appointed trustee of the debtor's bankruptcy estate. On March 23, 2009, the court entered an Order Abandoning Property and Lifting Stay, which was approved by counsel for the plaintiff, the defendant, and the debtor. The order abandoned "all consigned items from Carley Jewels, LLC and JOEB Enterprises, LLC."

On October 20, 2009, the plaintiff filed the complaint initiating this adversary proceeding, which seeks to avoid the debtor's return to the defendant of the nine items described above as preferential or fraudulent transfers. As indicated above, the defendant filed the motion for summary judgment on August 19, 2010. The defendant also filed a motion to strike portions of the plaintiff's affidavit on October 5, 2010.

## II.

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c). All reasonable inferences are drawn in favor of the non-moving party. *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### A.

The trustee seeks to avoid the transfers under § 547 or 548 of the Bankruptcy Code. One of the elements that must be proven to recover under either of those statutes is that there was a

3

transfer of an "interest of the debtor in property." 11 U.S.C. §§ 547(b), 548(a)(1). The defendant contends, first, that there is no genuine issue that the debtor did not have an interest in any of the items returned to the defendant.

In contending that the debtor did have an interest in the items, the plaintiff relies on Article 9 of the Uniform Commercial Code as enacted in Tennessee, alleging that the transactions constituted "consignments." Article 9 treats consignments as secured transactions, T.C.A. § 47-1-201(35), such that the goods are considered to be property of the consignee subject to a security interest in favor of the consignor, *id.* § 47-9-319. When consigned goods are returned to the consignor by a consignee that subsequently files a bankruptcy petition and the trustee seeks to avoid the return as a preferential transfer, "such goods are considered to be property of the debtor and thus subject to the provisions of § 547(b)." *Reisz v. Newcomb Oil Co. (In re Andaco, Inc.)*, 226 B.R. 578, 581 (Bankr. W.D. Ky. 1998).[1] Thus, if the transactions constituted "consignments," the transfers were of "interests of the debtor in property" that may be avoidable as preferential or fraudulent transfers.[2]

---

[1] Although there do not appear to be any cases decided since the revision of UCC Article 9 involving the avoidance of returns of consigned goods, there is no reason that the same principles would not apply under revised Article 9: "Insofar as creditors of the consignee are concerned, this Article to a considerable extent reformulates the former law, which appeared in former Sections 2-326 and 9-114, *without changing the results*." U.C.C. § 9-319 cmt. 2.

[2] Whether or not the transactions constituted "consignments" would have been irrelevant had the defendant filed a UCC financing statement, because "[p]re-petition transfers to a creditor that is fully secured on the petition date are generally not preferential because the secured creditor is entitled to 100 percent of its claims." *Batlan v. TransAmerica Commercial Fin. Corp. (In re Smith's Home Furnishings, Inc.)*, 265 F.3d 959, 964 (9th Cir. 2001); *accord, e.g.*, *Committee of Creditors Holding Unsecured Claims v. Koch Oil Co. (In re Powerine Oil Co.)*, 59 F.3d 969, 972 (9th Cir. 1995); *Goldberg v. Such (In re Keplinger)*, 284 B.R. 344, 347 (N.D.N.Y. 2002); *Hashimoto v. Clark*, 264 B.R. 585, 608 (D. Ariz. 2001); *Telesphere Liquidating Trust v. Galesi*, 246 B.R. 315, 319 (N.D. Ill. 2000).

The UCC defines "consignment" as follows:

"Consignment" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:

(A) the merchant:

(i) deals in goods of that kind under a name other than the name of the person making delivery;

(ii) is not an auctioneer; and

(iii) is not generally known by its creditors to be substantially engaged in selling the goods of others;

(B) with respect to each delivery, the aggregate value of the goods is one thousand dollars ($1,000) or more at the time of delivery;

(C) the goods are not consumer goods immediately before delivery; and

(D) the transaction does not create a security interest that secures an obligation.

T.C.A. § 47-9-102 (20). The parties' dispute focuses on the first requirement, i.e., that the goods be delivered "for the purpose of sale": the plaintiff asserts that the defendant delivered the jewelry items to the debtor for the purpose of sale; and the defendant asserts that seven of the nine items were not delivered for sale but only for display. The defendant acknowledges that two of the items were delivered to the debtor for purposes of sale subject to the defendant's approval.

The defendant relies on affidavits from its principal and the debtor's principal to the effect that the seven items were delivered to the debtor for display purposes and not for sale. With

5

respect to the helios earrings, the plaintiff relies on a consignment memo dated July 14, 2008.[3]

The defendant's consignment memo forms stated:

> This document constitutes a consignment contract agreement between Carley Jewels, and the consignee for the sole purpose of a sale or purchase. Title of the above merchandise shall remain that of Carley Jewls., LLC until actual payment is made in full.

The "Customer" is identified as "W. Gallery." The plaintiff has not submitted any consignment memos with respect to any of the other six items of jewelry. However, five of those items are reflected on the debtor's inventory report as having been held in inventory. Regarding the last item (the helios necklace), the plaintiff has submitted copies of invoices suggesting that the item was sold to the debtor.

Because the defendant acknowledges that two of the items of jewelry were delivered to the debtor for sale and because of the conflicting evidence regarding whether the remainng seven items were delivered to the debtor for the purpose of sale, the court concludes that there are genuine issues of fact precluding summary judgment on the ground that the defendant's transactions with the debtor constituted "consignments." Accordingly, the court will not grant summary judgment on the issue of whether the transfers were "of an interest of the debtor in property" for the purposes of §§ 547 and 548.[4]

---

[3] The plaintiff has also submitted consignment memos with respect to the lago ring and the sugar pendent and earring set, which the defendant acknowledges were delivered to the debtor for sale.

[4] The defendant also argues that it was not a "creditor" within the meaning of § 547(b)-(1). However, if the transactions were "consignments" such that they are treated as secured transactions, the return of the items would be transfers to a creditor for or on account of antecedent debts, because the defendant's "security interests" would secure the debtor's obligation to either pay for the items when the debtor sells them or return the items to the defendant if they went un-
(continued...)

**B.**

The defendant also seeks summary judgment on the ground that the plaintiff has abandoned his avoidance claims by abandoning all interest of the debtor's bankruptcy estate in goods that the defendant consigned to the debtor. In so contending, the defendant relies on the Order Abandoning Property and Lifting Stay entered on March 23, 2009, whereby the plaintiff abandoned "all consigned items" from the defendant. However, the plaintiff did not abandon the causes of action asserted in this adversary proceeding.

A trustee may only abandon property of the estate. 11 U.S.C. § 554(a). The jewelry items that are the subject of this proceeding were not property of the debtor when its chapter 7 petition was filed, as they had already been returned to the defendant,[5] so the items did not become property of the debtor's bankruptcy estate. *Id.* § 541. Accordingly, the items could not have been abandoned in March 2009. Moreover, the plaintiff does not seek the turnover of those items in this proceeding, but seeks a money judgment for the value of the items. *See id.* § 550(a).

The defendant's contention that "[t]he abandonment was of all claims" is simply incorrect, as the agreed order does not even use the word "claim." The court will not grant the defendant summary judgment on this basis.

---

[4] (...continued)
sold. It does not appear that the plaintiff has a claim for avoidance of the transfers as fraudulent conveyances, however, because, if the transactions were "consignments" as the plaintiff contends, the consideration for the return of the items to the plaintiff – the satisfaction of the obligation to pay for the items or return them – would appear to constitute "reasonably equivalent value." *See* 11 U.S.C. § 548(a)(1)(B)(I), (d)(2)(A).

[5] For the same reason, the items were not "consigned items" at the time the agreed order was entered.

### III.

The defendant has also filed a motion to strike those portions of the plaintiff's affidavit. The court will rule on the specific objections *seriatim*:

1. The references in Paragraph 11 of the affidavit to '9 items of jewelry" is appropriate, as the descriptions of the transferred goods in the complaint are broad enough to include nine items.

2. The court interprets the language quoted from Paragraph 14 of the affidavit as indicating that the items appear on the debtor's inventory report.

3. Paragraph 19 of the affidavit is relevant as stating the plaintiff's understanding of and his intent in signing the Order Abandoning Property and Lifting Stay.

4. The court will disregard the statement in Paragraph 20 of the affidavit that Cornerstone acted "for merciful reasons of its own."

5. The court will disregard the statement in Paragraph 21 of the affidavit regarding the plaintiff's lack of knowledge.

6. Paragraph 22 of the affidavit is relevant to the "greater percentage" element of preference avoidance, 11 U.S.C. § 547(b)(5).

For the foregoing reasons, the court will deny the defendant's motion to strike portions of the plaintiff's affidavit.

### IV.

There is a genuine issue of fact material to whether the jewelry that the debtor returned to the defendant constituted property in which the debtor had an interest as required by §§ 547 and 548 of the Bankruptcy Code. In addition, the court holds that the plaintiff has not abandoned the avoidance causes of action asserted in this proceeding. Accordingly, the court will enter a separate order denying the defendant's motion for summary judgment. The court will also deny the defendant's motion to strike certain portions of the plaintiff's affidavit.

# # #